**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Stefannie Dyson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23-cv-16515 |
| v. | ) | |
| | ) | Hon. April M. Perry |
| Thomas Dart, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Stefannie Dyson was detained at the Cook County Jail when she brought this lawsuit pursuant to 42 U.S.C. § 1983. Doc. 6. Specifically, the complaint alleges that Plaintiff requested but was denied material from the jail's law library that Plaintiff believed necessary to appeal orders in her criminal proceedings. *Id.* at 5-7. The complaint further alleges that "male [Cook County Department of Corrections] inmates are allowed to physically and personally go to the library and obtain any legal services" and are even "given laptops to use if they are pro se litigants." Doc. 6 at 7. Defendants include Krystal Sankey, the jail's law librarian, T. Patterson-Dean, the law library supervisor, and Sheriff Thomas Dart. The Court allowed the case to proceed past screening for having plausibly alleged claims related to denial of court access and an equal protection clause violation. Doc. 5. Before this Court are Plaintiff's and Defendants' cross-motions for summary judgment. Docs. 141, 147, 151. For the reasons that follow, the Court grants Defendants' motions and denies Plaintiff's motion.

## LEGAL STANDARD

Summary judgment is proper when the movant shows that there is no genuine dispute of material fact such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury

could return a verdict for the nonmoving party.'" *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Although the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, the party that bears the burden of proof must present facts showing there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *LaRiviere v. Bd. of Trs.*, 926 F.3d 356, 359 (7th Cir. 2019). To avoid summary judgment, the nonmovant must show more than metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). While the court must construe the facts in the light most favorable to the nonmovant and draw all reasonable inferences in its favor, this obligation does not extend to drawing inferences that are supported only by speculation or conjecture. *See Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013). On cross-motions for summary judgment, the Court construes "all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). The Court evaluates cross-motions together and will grant summary judgment for a party only if "the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute" and the moving party is entitled to judgment as a matter of law. *Bloodworth v. Vill. of Greendale*, 475 F. App'x 92, 95 (7th Cir. 2012).

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. Under Local Rule 56.1, both parties may submit statements of material fact and must submit responses to their opponent's statements of fact. L.R. 56.1. Each asserted fact "must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." L.R. 56.1(d)(2). To properly dispute a fact, "a party must

2

cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." L.R. 56.1(e)(3). Unsupported facts and facts supported only by inadmissible evidence are insufficient to avoid summary judgment; "a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion." *Albiero v. City of Kankakee,* 246 F.3d 927, 932 (7th Cir. 2001) (internal quotation marks and citation omitted). Local Rule 56.1 is not a mere formality; it is necessary "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal quotation omitted). Thus, the district court has the discretion to demand strict compliance with Local Rule 56.1. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011).

## BACKGROUND

### A.      Plaintiff's Criminal Proceedings

The events underlying this lawsuit took place while Plaintiff was in the custody of the Cook County Department of Corrections ("CCDOC"), from January 5, 2021, through February 6, 2024. *See* Doc. 153 ¶¶ 1, 3. During that time, there were three relevant criminal proceedings.

Plaintiff's first criminal charge in Illinois arose on December 9, 2019, when Plaintiff was indicted on four counts of child abduction in *Illinois v. Dyson*, No. 19CR1667801 (Circuit Court of Cook County, Illinois) ("the child abduction case"). Doc. 149 ¶ 1; Doc. 149-1 at 1.[1] Plaintiff

---

[1] Plaintiff admits in part and disputes in part nearly all of Defendants' asserted facts, even those that rely on public records. *See* Doc. 160. As Plaintiff does not challenge the authenticity or accuracy of those

was arraigned on December 17, 2019, appointed a public defender, and released on bond. Doc. 149 ¶ 2; Doc. 149-1 at 14. Plaintiff subsequently retained private counsel to appear on her behalf, but private counsel withdrew a short time later and the court again appointed a public defender to represent Plaintiff. Doc. 149 ¶¶ 3-4; Doc. 149-1 at 13. The docket suggests that Plaintiff remained represented by a public defender for the remainder of the child abduction case, even though she continued to submit documents to the state court that she prepared herself. *See* Doc. 149-1.

Plaintiff was out on bond in the child abduction case when on January 5, 2021 she was arrested and charged as a fugitive based upon an out-of-state warrant in *Illinois v. Dyson*, No. 21110209701 (Circuit Court of Cook County, Illinois) ("the fugitive case"). Doc. 149 ¶ 5; Doc. 149-3 at 15. That same day, the state court appointed Plaintiff a public defender, held a bond hearing, and found probable cause to detain Plaintiff. Doc. 149 ¶ 5; Doc. 149-3 at 19. On February 8, 2021, the court ordered "Bond to Stand, No Bail" and Plaintiff was not released from custody. Doc. 149 ¶ 6; Doc. 149-3 at 18. On February 23, 2021, a motion for writ of habeas corpus was filed on Plaintiff's behalf in the fugitive case. Doc. 149 ¶ 7; Doc. 149-3 at 18. On March 3, 2021, the fugitive charge was resolved by *nolle prosequi*. *See id.*

The fugitive case was based upon a Governor's Warrant that had been issued for Plaintiff's arrest in connection with pending criminal charges in Wisconsin. Doc. 149 ¶ 8; Doc. 149-5. On March 3, 2021, although the fugitive case had been dismissed, the judge presiding over the fugitive case accepted the warrant and ordered that Plaintiff remain in custody without

---

public records, instead challenging their "implication," "characterization," "legality," and "relevance," *id.* at 1-4, the Court accepts these facts as true, and cites to Defendants' proffered fact and the public record supporting it in this Opinion.

4

bail. Doc. 149 ¶ 8; Doc. 149-5 at 2. Between March 3, 2021, and November 22, 2021, the docket in the fugitive case reflects that Plaintiff or someone acting on her behalf filed petitions for writ of habeas corpus and motions for a bail hearing. Doc. 149-3 at 16-17. On November 22, 2021, the judge presiding over the fugitive case denied Plaintiff's petitions for habeas corpus and ordered the Governor's Writ to stand: "DEF TO BE HELD NO BAIL." Doc. 149 ¶ 10; Doc. 149-3 at 15-16.

During this same time period, the docket in the child abduction case reflects that a behavioral exam was ordered for Plaintiff on March 4, 2021 and December 9, 2021, and Plaintiff was not deemed fit to stand trial during this time period. Doc. 149 ¶ 11; Doc. 149-1 at 11. The docket also reflects that Plaintiff remained "in custody on another case" even though bond had been granted in the child abduction case. *See id.*

On August 4, 2022, the judge presiding over the child abduction case entered an order remanding Plaintiff to custody without bail.  Doc. 152 ¶ 1; Doc. 152-8 at 11; Doc. 160 ¶ 1. The Court also ordered that Defendant be "remanded to Cermak for psychiatric evaluation." Doc. 160 at 92. Court records reflect that Plaintiff remained in custody by agreement on August 18, 2022; September 15, 2022; and October 20, 2022. Doc. 149 ¶ 14; Doc. 149-10. Plaintiff did not immediately appeal the detention orders. Instead, beginning in September 2022, Plaintiff or someone acting on her behalf filed several documents in the child abduction case, which included a demand for a new judge (September 8, 2022); a "petition to substitute judge for cause and motion to be heard" (December 28, 2022); a second petition to substitute judge (April 24, 2023); a writ of habeas corpus and writ of mandamus (April 27, 2023); and unspecified correspondence (May 5, 2023). Doc. 149-1 at 6-9.

5

On May 5, 2023, the judge presiding over the child abduction case found Plaintiff fit to stand trial. Doc. 149 ¶ 16; Doc. 149-1 at 6.[2] Four days later—on May 9, 2023—Plaintiff filed a *pro se* notice of appeal indicating her intent to "appeal unconstitutional orders of Cook County Circuit Judge Pitman, Willis, Navarro, Paninci made in error. And seeking orders addressing all pending motions via petition for writ of mandamus." Doc. 149 ¶ 17; Doc. 149-13. The Office of the State Appellate Defender was appointed to represent Plaintiff and moved to dismiss the appeal because "[a] review of the Notice of Appeal filed in this case reveals that there is no appealable order." Doc. 149 ¶¶ 18, 21; Doc. 149-17.

On July 13, 2023, bond in the child abduction case was reinstated, and the bail amount was litigated through August 2023 with Plaintiff ultimately receiving an I-Bond release. Doc. 149-1 at 4-5. That said, Plaintiff remained in custody "on a WISC HOLD." *See id.* at 4; Doc. 149 ¶¶ 20, 24.

On January 8, 2024, the child abduction case was resolved by *nolle prosequi*. Doc. 149 ¶ 22; Doc. 149-18. Plaintiff was released from CCDOC on February 6, 2024, and transferred to custody of the Wood County Jail in Wisconsin Rapids, Wisconsin. Doc. 149 ¶ 23; Doc. 149-20 at 57.

**B.      Plaintiff's Attempts to Obtain Documents and Services from the Cook County Jail Law Library**

Defendant Sankey was the law librarian for Division 3 Annex from May 2022 to March 2023. Doc. 149 ¶ 25; Doc. 160 ¶ 25. As the law librarian, she was responsible for delivering appropriate and properly requested documents to inmates. Doc. 150 ¶ 4. During Plaintiff's

---

[2] This finding was presumably based upon an April 11, 2023 mental health report completed by clinicians at the Elgin Mental Health Center. Doc. 160 at 102-109.

confinement at CCDOC, Plaintiff utilized the law library to obtain the materials that she claims she needed to "litigate pro se" during her criminal proceedings. Doc. 141 ¶ 2.

Plaintiff testified at her deposition that she started to experience trouble obtaining material from Sankey in mid-June 2022 and that Plaintiff submitted a grievance each time she was denied legal services. Doc. 149 ¶ 27; Doc. 160 at 8. The grievances are as follows:

- Grievance No. 2022X09604 dated June 18, 2022: Plaintiff complained that on June 15, 2022, she requested "3 or 4" Illinois Supreme Court Rules "for appeals" but received just one rule. Doc. 149-21.

- Grievance No. 2022X09604 dated June 24, 2022: Plaintiff complained that Sankey refused to "give me any of the legal information she brought for me because she did not like my signature of all rights reserved." Doc. 149-23.

- Grievance No. 202214096 dated September 22, 2022: Plaintiff complained that Law Librarian Dorsey refused to deliver requested documents because Plaintiff's signature was illegible. Doc. 149-24.

- Grievance No. 2022X14192 dated September 26, 2022: Plaintiff complained that she did not receive "sample writ of mandamus examples" and "several other things." Doc. 149-25.

- Grievance No. 2022X16230 dated October 31, 2022: Plaintiff complained that she did not receive "legal materials." Doc. 149-26.

- Grievance No. 2022X18016 dated December 7, 2022: Plaintiff complained that she did not receive copies of "documents that I need to file and send out," so she had to send originals and was unable to retain copies. Doc. 149-27.

7

- Grievance No. 2022X18116 dated December 9, 2022: Plaintiff complained that Sankey wrote on "all my documents" and refused to make copies of "other documents." Doc. 149-28. Plaintiff explained at her deposition that she remembered just one time when Sankey wrote on her "legal documents." Doc. 149 ¶ 50; Doc. 149-20 at 46. Specifically, Sankey wrote Plaintiff's name on the front and back of the documents; Sankey's writing did not render the documents illegible. *Id.*

- Grievance No. 2022X18116 dated December 12, 2022: Plaintiff complained that Sankey lost four pages of an original document, but admitted that Plaintiff had copies of the pages. Doc. 149-29.

- Grievance No. 2022X18839 dated December 20, 2022: Plaintiff complained that when she asked Sankey to make copies of unspecified documents, Sankey responded: "you need to make sure that your name is on every page . . . so we can make sure they belong to you." Doc. 149-30.

- Grievance No. 2022X18839 dated December 29, 2022: Plaintiff complained that Sankey failed to make same-day copies. Doc. 149-31.

- Grievance No. 2023X14880 dated September 19, 2023: Plaintiff complained that Sankey told another law librarian to decline Plaintiff's copy requests. Doc. 149-33.

- Grievance No. 2023X17377 dated "October 19, 2023 – Present": Plaintiff complained that she "put in for an appellate court brief application and fee waiver form" to "file an interlocutory appeal regarding an order rendered 10/19/23 by the Presiding Judge." Doc. 141 at 26. According to Plaintiff, she did not receive the requested materials "before the deadline expired." *Id.* at 7.

8

Plaintiff offers few specifics about the importance of the legal materials and services that she requested. She mentions specifically only an interlocutory appeal she was researching in June 2022, and an October 2023 appeal with "a mandatory deadline." *Id.* at 3-4. When Plaintiff was asked during her deposition what information Sankey refused to deliver, Plaintiff answered: "Whatever I requested." Doc. 149-20 at 42. Plaintiff further testified that the rules to appeal the August 4, 2022 bond revocation in the child abduction case were "the most important" documents denied to her. *Id.* at 52.[3] Plaintiff did not recall whether she made more than one request for these materials. *Id.* Plaintiff concedes that when law library personnel refused to make copies for her, "other CCDOC staff and Cermak Health Services employees made copies for Plaintiff outside of the official law-library procedures so Plaintiff could submit motions, exhibits, and pleadings." Doc. 141 at 9.

Defendant Sankey denies any wrongdoing. Sankey explained in a Declaration attached as an exhibit to her statement of facts that she consulted with her supervisors the first time Plaintiff refused to sign her name on legal material requests and learned that it was "acceptable" for Plaintiff to sign "all rights reserved" instead of her name. Doc. 149-34 at 1. Sankey testified that she did not thereafter refuse to deliver legal documents to Plaintiff based on the lack of a signature. *Id.* at 2.

As to Defendants Dart and Patterson-Dean, Plaintiff testified during her deposition that her theory of liability against Sheriff Dart stems from his "duty to supervise" jail employees. Doc. 152 ¶ 23. Plaintiff did not communicate with Dart directly and received "no personal

---

[3] Plaintiff explained during her deposition that the June 2022 request for appellate rules was in anticipation of the bond revocation. Doc. 149-20 at 51. How Plaintiff could have known that her bond was going to be revoked six weeks before it happened is unclear.

responses from him." *Id.* ¶¶ 21, 22; Doc. 160 ¶¶ 21, 22. Similarly, Plaintiff testified that she has no personal knowledge that Defendant Patterson-Dean was involved in the events underlying this lawsuit. Doc. 152 ¶¶ 25-28; Doc. 160 ¶¶ 25-28. Plaintiff did, however, submit documents showing that Patterson-Dean responded to Grievance Nos. 2022X09604 & 2022X18839. Doc. 160 at 99, 127.

Plaintiff initiated this lawsuit in December 2023 because, in her opinion, her interactions with Defendant Sankey and the Cook County Jail law library violated her constitutional right to court access during her criminal proceedings. Doc. 6. The Court screened the complaint and based on Plaintiff's assertion that the services provided by the law library were insufficient for "*pro se* litigants like myself," *see id.* at 7, allowed a court-access claim to proceed against Defendants Sankey, Dart, and Patterson-Dean. Doc. 5 at 4. The Court also allowed an equal protection claim to proceed past screening because Plaintiff alleged that the Defendants allowed male inmates greater access to the law library than female inmates. *Id.* All other claims and defendants were dismissed.

## ANALYSIS

The Court begins with Plaintiff's claim for lack of access to the court. Although the parties each raise several arguments for why they are entitled to summary judgment in their favor (and why it should be denied to their opponent), the Court concludes that the dispositive problem for Plaintiff is that Plaintiff has not established an actual injury stemming from any purported denial of legal materials or library services.

It is well-established that inmates have a constitutional right to meaningful court access. *Bounds v. Smith*, 430 U.S. 817, 822-23 (1977); *Lehn v. Holmes*, 364 F.3d 862, 865-66 (7th Cir.

10

2004). That said, the law "does not require any specific resources such as a law library or a laptop with a CD-ROM drive or a particular type of assistance. Instead, a prisoner must show that a prison's policy actually hampered her pursuit of a legal claim." *Lehn*, 364 F.3d at 868. In other words, an inmate must be both deprived of legal materials *and* suffer an actual injury because of the deprivation. *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Ortiz v. Downey*, 561 F. 3d 664, 671 (7th Cir. 2009). To that end, in order to prevail on a court-access claim, "a plaintiff must demonstrate that state action hindered his or her efforts to pursue a nonfrivolous legal claim and that consequently the plaintiff suffered some actual concrete injury." *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000).

In this case, Plaintiff identifies her injury as the failure to receive "appellate materials necessary to file within a mandatory deadline." Doc. 141 at 11-13. Specifically, Plaintiff points to the June 2022 "delay and incomplete delivery of appellate rules," and clarifies that she sought only to "appeal the [August 2022] Illinois bond order, not the Wisconsin warrant." Doc. 160 at 152-53, 156.[4] Plaintiff contends that her inability to challenge the Illinois bond order constitutes

---

[4] There is also some indication that Plaintiff seeks to challenge an October 19, 2023 denial of materials related to a case with a "mandatory deadline." Doc. 141 at 3-4. However, Plaintiff never specifies which case or which deadline Plaintiff refers to. The Court notes that Plaintiff has been a frequent civil litigant in this district, and that at least one of her grievances around this time refers to a civil case in the "U.S. District Court" and its deadlines. *See id.* at 24 (September 19, 2023 grievance). Suffice it to say, inmates have a constitutional right to access to the courts "to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 356. Without any information about the case, deadline, or nonfrivolous claim Plaintiff wanted to bring, Plaintiff has not demonstrated a genuine fact in dispute to support her court access claim.

11

injury "[e]ven if the Wisconsin hold remained in place." *Id.* at 154. It is her inability "to file a legal claim" that, in Plaintiff's opinion, "constitutes actual injury." *Id.* at 160.

The Court is not persuaded that Plaintiff suffered any concrete injury even if she was denied the right to appeal the Illinois detention order in the child abduction case. The record before the Court establishes that at the time Plaintiff sought to appeal the August 2022 detention order in the child abduction case, she was already in custody without bail on the Governor's Warrant. The judge presiding over the Illinois fugitive case detained Plaintiff under that warrant even though the fugitive case had been resolved. *See* Doc. 149-3 at 18. Therefore, appealing the August 2022 bond order in the child custody case would not have changed Plaintiff's custodial status. Indeed, Plaintiff remained in custody even after she was granted an I-bond in the child abduction case. *See* Doc. 152-8 at 3 (reflecting that Plaintiff was "on bond" in the child abduction case in December 2023, but also "in custody on a Wisc Hold").

Even setting aside the Wisconsin case, Plaintiff's bald assertion that she suffered an injury when she "missed" a court "deadline" is insufficient to establish a viable cause of action. The injury requirement of a court-access claim "is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. To survive summary judgment, Plaintiff was required to produce evidence showing that shortcomings in the law library services hindered her ability to pursue a nonfrivolous claim. *Id.* at 352-53; *In re Maxy*, 674 F.3d 658, 660-61 (7th Cir. 2012) (collecting cases). Plaintiff produced no such evidence.

First, Plaintiff produced no evidence of what deadline she might have missed because of Defendants' conduct. Defendants assert that Illinois Supreme Court Rule 604 governs appeal of the August 2022 bond order. Rule 604 provides that criminal defendants may appeal orders

12

revoking bail "any time before conviction." Ill. S. Ct. R. 604(c)(1), (2). It therefore appears that an appeal from the August 2022 bond order remained available to Plaintiff even though she might not have received the documents she sought from the law library (whether those documents were Illinois Supreme Court Rules, case law, filing instructions, photocopies, or anything else) as quickly as she might have liked.

Second, the dockets in the fugitive and child abduction cases reflect that the Illinois courts appointed counsel for Plaintiff.[5] "[A]n inmate's right of access to the courts is generally satisfied if [s]he is represented by counsel." *Castaneda v. Dart*, No. 18 CV 3616, 2019 WL 6699189, at *7 (N.D. Ill. Dec. 9, 2019) (collecting cases). Although Plaintiff claims that she considered herself *pro se* because she "was not relying on counsel," Doc. 160 at 156, the Illinois dockets do not show that Plaintiff was ever given permission to proceed *pro se*.[6] Just an in federal court, a criminal defendant in Illinois does not have a right to both have an appointed attorney and to file documents herself. *See In re Sean N.*, 911 N.E.2d 1094, 1106 (Ill. App. Ct. 2009) ("[A] defendant possesses no right to some sort of hybrid representation, whereby he would receive the services of counsel and still be permitted to file *pro se* motions."); *People v. James*, 841 N.E.2d 1109, 1113 (Ill. App. Ct. 2006) ("[W]hen a defendant is represented by counsel, the defendant generally has no authority to file *pro se* motions, and the court should not

---

[5] Although the Court questions the accuracy of the April 15, 2021 transcript of proceedings provided by Plaintiff, which identifies speakers as "alleged defendant," "alleged public defender," and "acting judge," even Plaintiff's transcript demonstrates that while she continued to assert that she was not represented, both the public defender and judge treated Plaintiff as represented by counsel. See Doc. 160 at 89-91.

[6] Given that Plaintiff was deemed unfit to stand trial in the child abduction case between March 2021 and May 2023, she would not have been allowed to challenge the August 2022 detention order *pro se* as she would not have possessed the ability to knowingly and intelligently waive the right to counsel. *See Illinois v. Washington*, 71 N.E.3d 825, 829 (Ill. App. Ct. 2017) (holding that it is reversible error to allow a defendant to proceed *pro se* when "a bona fide doubt exists as to a defendant's competency").

consider them."). Moreover, even if she had been given permission to proceed *pro se*, "a defendant who declines appointed counsel and instead invokes his constitutional right to self-representation . . . does not have a right to access to a law library." *United States v. Sykes*, 614 F.3d 303, 311 (7th Cir. 2010) (internal quotation marks and citations omitted). "The rule is that the [criminal] defendant has the right to legal help through appointed counsel, and when he declines that help, other alternative rights, like access to a law library, do not spring up." *Id.* (cleaned up).

In conclusion, considering the record as a whole and drawing reasonable inferences in Plaintiff's favor, the record is devoid of evidence showing that Defendants caused Plaintiff to suffer a cognizable injury as the result of any deficiencies in library services at the Cook County Jail. Plaintiff may not have received the documents or copying services she requested from the law librarians, but Plaintiff produced no evidence suggesting that a lack of legal material or copying services prevented her from filing a nonfrivolous appeal or motion or that she was entitled to file an appeal or motion given that she was represented by counsel. Plaintiff also identified no authority showing that the right of court access guaranteed by the United States Constitution entitled her to any greater legal assistance than she received. Defendants therefore are entitled to summary judgment on the court-access claim.

That leaves the equal protection claim, which arose from Plaintiff's assertion in the complaint that male inmates were allowed greater law library access than female inmates. Defendants identified the equal protection claim in their motions and moved for summary judgment on the claim. *See* Doc. 148 at 15; Doc. 151 at 2. In response, Plaintiff presented no admissible evidence supporting her allegations, and any "evidence" she did submit did not

14

support her claims. *See* Doc. 160 at 151 (citing Doc. 160 at 118 and 98). Specifically, Plaintiff has provided only hearsay that male and female inmates are treated differently with respect to library services. Consequently, Plaintiff did not establish a disputed issue of fact for trial. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) ("Summary judgment is the 'put up or shut up' moment in a lawsuit."). Therefore, Defendants are also entitled to summary judgment on the equal protection claim.

### Conclusion

For the reasons discussed above, the Court denies Plaintiff's motion for summary judgment, Doc. 141, and grants Defendants' motions for summary judgment, Docs. 147, 151.

Date: July 22, 2026                                    /s/  *April M Perry*

15